IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IES COMMERCIAL, INC., *et al.*,

     Plaintiffs,

     v.

MANHATTAN TORCON A JOINT
   VENTURE, *et al.*,

     Defendants.

\*    Civil Action No. RDB-17-3630

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs IES Commercial, Inc. and United States f/b/o IES Commercial, Inc. (collectively, "IES" or "Plaintiffs") bring this action against Manhattan Torcon A Joint Venture ("MTJV"), its general partners Manhattan Construction Company and Torcon, Inc. (all three collectively the "MTJV Defendants"), and four insurance companies Federal Insurance Company, Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, and Travelers Casualty and Surety Company (collectively, the "Surety Defendants"), stemming from the construction of a biological research facility for the United States Army Medical Research Institute of Infectious Diseases at Fort Detrick, Maryland. (Am. Compl., ECF No. 19.) IES, alleging that it is owed over $20 million for its work on the facility, brings claims for cardinal change/quantum meruit[1] against the MTJV Defendants (Count I) and breach of contract against all of the Defendants (Counts II, III).

---

[1] As explained below, a cardinal change occurs in the context of a government contract "when the government demands a contractual alteration 'so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.'" *Hancock Electronics Corporation v. Washington Metropolitan Area Transit Authority*, 81 F.3d 451 (4th Cir. 1996) (quoting *Allied Materials & Equip. Co. v. United States*, 215 Ct. Cl. 406, 569 F.2d 562, 563-64 (1978)). The Plaintiffs assert that the cardinal change theory applies because a massive fire occurred during the construction of the facility.

1

The Defendants have moved to dismiss the Amended Complaint.[2] (ECF No. 22.) The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 22) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED as to Count I, and Plaintiffs' cardinal change/quantum meruit claim is DISMISSED. Defendants' Motion is DENIED, however, as to Counts II and III and Plaintiffs proceed with their breach of contract claims.

## BACKGROUND

In February of 2011, Defendant Manhattan Torcon A Joint Venture ("MTJV") subcontracted electrical work to Plaintiff IES Commercial, Inc. ("IES") for a massive government construction project to build a research facility. On August 14, 2013, after IES had completed and billed for approximately 92.5% of its labor hours, a fire at the project destroyed or damaged more than half of the 950,000 square foot facility. IES then began performing fire remediation work, and the facility is still not yet complete. The background provided below describes the subcontract between IES and MTJV, the fire, and Plaintiffs' allegations of MTJV's mismanagement of the project prior to and after the fire.

## I.     The Subcontract between IES and MTJV

In 2009, the United States Army Corps of Engineers contracted for the building of a six-story, 950,000 square foot biological research facility for the United States Army Medical Research Institute of Infectious Diseases at Fort Detrick, Maryland (the "Project"). (Am. Compl., ECF No. 19 at ¶¶ 14-15, 38.) Defendant MTJV became the general contractor for

---

[2] Also pending is the Defendants' Motion to Dismiss the Original Complaint. (ECF No. 18.) This Motion is MOOT.

the Project, and on February 2, 2011, MTJV hired IES as an electrical subcontractor to do all of the electrical and underground electrical distribution system work (the "Subcontract"). (*Id.* at ¶¶ 15-18, 42; ECF No. 1-1.)

Under the Subcontract, MTJV agreed, among other things, to "not unreasonably delay, interrupt, obstruct, or otherwise hinder IES in the performance of its [w]ork under the Subcontract" and "to coordinate its own work and that of its other subcontractors to allow IES to perform its [w]ork under the Subcontract in a reasonably efficient manner." (*Id.* at ¶¶ 46, 51.) IES asserts that in agreeing to a price for the Subcontract, IES relied on MTJV's duties and obligations set forth in the Subcontract. (*Id.* at ¶ 52.) For example, IES asserts that it priced the Subcontract based on MTJV agreeing to schedule and coordinate the work of all of its subcontractors and to not "unreasonably demand inefficient and unnecessary additional work from IES." (*Id.* at ¶ 53.) The fixed price for the Subcontract was $61,146,000.[3] (*Id.* at ¶¶ 54, 55.) As required under the Miller Act, 40 U.S.C. § 3131, *et seq.*, the Surety Defendants issued a payment bond identifying MTJV as the principal (the "Bond").[4] (*Id.* at ¶ 56; ECF No. 1-2.) The penal sum indicated on the Bond is $333,000,000. (*Id.* at ¶ 59.)

Article 4 of the Subcontract, titled "Changes in the Work", provides that "MTJV may, at any time, unilaterally or by agreement with Subcontractor, without notice to any surety, make changes in the Work covered by this Subcontract. Any unilateral order or

---

[3] Pursuant to agreed change orders, the price of the Subcontract increased to $64,532,184. (ECF No. 19 at ¶ 55.) This figure does not, however, include the modification the parties entered into after the fire. (*Id.*)

[4] The Miller Act, 40 U.S.C. § 3131, *et seq.*, imposes certain obligations on the prime contractor on any "contract of more than $100,000 . . . for the construction, alteration, or repair of any public building or public work of the Federal Government," 40 U.S.C. § 3131(b), including the requirement that the contractor furnish a payment bond, through a satisfactory surety, "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." *Id.* § 3131(b)(2).

agreement under this Article 4 shall be in writing. Subcontractor shall perform the Work as changed without delay." (ECF No. 1-1 at ¶ 4.1.)

## II.     IES's work under the Subcontract prior to the fire

IES asserts that prior to the fire, MTJV "consistently failed to perform" its duties and obligations under the Subcontract. (ECF No. 19 at ¶ 60.) According to IES, this included:

> 62. MTJV abandoned the Project schedule and ceased providing the schedule updates required by the Subcontract. MTJV ceased providing accurate and complete schedule updates to IES. On information and belief, MTJV also ceased providing such updates to its other subcontractors.
>
> 63. MTJV failed to coordinate the work of its other subcontractors on the Project. This led to multiple instances of IES working in the same space at the same time as other subcontractors ("stacking of trades"), and of areas in which IES was scheduled to perform work not being ready to receive IES's work due to precursor activities to be completed by other trades not being done.
>
> 64. MTJV failed to coordinate access to the Project site.
>
> 65. MTJV directed IES to keep excess manpower on site even though no productive work was available for those employees to perform.

As a result of these failures, which IES collectively refers to as "MTJV's Mismanagement," IES asserts that prior to the fire, it spent 65,078 additional, unplanned labor hours than those contemplated by the Subcontract and incurred no less than $4,970,092 in damages as a result. (*Id.* at ¶¶ 67-68.) Throughout this time, IES sent MTJV at least 300 notices setting forth and explaining how MTJV's actions were causing the ongoing inefficiencies, labor impacts, and additional costs. (*Id.* at ¶ 69.)

## III.    The fire

On August 14, 2013, there was a fire at the Project that destroyed or damaged most

of the Project's west side, or more than half of the 950,000 square foot facility.[5] (*Id.* at ¶¶ 22, 24.) At the time of the fire, IES asserts that it had completed and billed for approximately 92.5% of the labor hours included in its work under the Subcontract, with approximately 7.5% of the labor hours remaining to be performed. (*Id.* at ¶ 104.) The fire, however, damaged or destroyed significant portions of IES's work. (*Id.* at ¶ 72.) Plaintiffs assert that the fire "changed the nature of the Project from new construction to a disaster recovery, restoration, and reconstruction Project," fundamentally altering the work IES had contracted to perform for MTJV. (*Id.* at ¶¶ 26-27.)

## IV.     IES's work under the Subcontract after the fire

After the fire, the Plaintiffs assert that "MTJV desired that IES perform work to repair, replace, or otherwise remediate IES's Work in place that had been destroyed and/or damaged by the Fire," which the Plaintiffs refer to as "fire remediation work." (ECF No. 19 at ¶ 73.) Subsequently, in October or November of 2013,[6] MTJV and IES entered into an amendment to the Subcontract related to the fire remediation work (the "Fire Rider"). (*Id.* at ¶ 74; ECF No. 1-3.) The Fire Rider included a rate schedule that set forth agreed hourly labor rates, general conditions costs, and markups for overhead, profit and bond. (ECF No. 1-3.) Further, the Fire Rider set forth a system whereby IES would perform the fire remediation work as directed by MTJV and submit daily work tickets and monthly invoices. (*Id.*) Once MTJV received approval and payment by the insurance carrier, MTJV would pay IES within ten days. (*Id.*)

---

[5] The Amended Complaint does not allege the cause of the fire, but only that it was not caused by any action or omission of IES. (ECF No. 19 at ¶ 23.)

[6] The Amended Complaint alleges that the parties entered into the Fire Rider on or around October 21, 2013, but the document itself shows that an IES representative signed the Fire Rider on November 7, 2013 and an MTJV representative signed the Fire Rider on November 19, 2013. (ECF No. 19 at ¶ 74; ECF No. 1-3.)

Plaintiffs assert that from the Fall of 2013 through August of 2017, it performed fire remediation work pursuant to the Fire Rider. (ECF No. 19 at ¶ 79.) IES asserts, however, that after the fire, "MTJV's Mismanagement," or failure to meet its obligations under the Subcontract, continued and led to even more significant labor inefficiencies for IES. (*Id.* at ¶ 105.) IES alleges that these inefficiencies included:

107. MTJV failed to develop a Project schedule that accounted for all base Project work incomplete as of the time of the Fire (*i.e.* IES's Post Fire Base Contract Work and similar work remaining to be performed by other subcontractors) *and* all Fire Remediation Work.

108. Notwithstanding the lack of a schedule accounting for all remaining work, MTJV repeatedly directed IES to increase its manpower to perform the Post-Fire Base Contract Work[.]

109. MTJV forced IES to work out of sequence[.]

110. MTJV's inability to coordinate the work of its other subcontractors was even worse during the Post-Fire Period. MTJV frequently directed IES to perform Work in certain areas of the Project, only for IES to discover that necessary walls, drywall, and ceiling grids – all work to be performed by others as a necessary precursor to IES's work – were incomplete.

111. MTJV's failure to coordinate its subcontractors led to other trades working out of sequence and installing work that was supposed to come *after* IES's work *before* IES had worked in a particular area. This forced IES to remove the work of other contractors in order to proceed with its own work[.]

112. MTJV's Mismanagement caused IES to stop and start work to accommodate other trades. For instance, due to incomplete work in the tele data room, IES had to put its work on hold so another contractor, NETcom, could complete its installation.

113. MTJV improperly remediated work of other subcontractors which had been damaged by the Fire, which caused inefficiencies and rework in IES's Post-Fire Base Contract Work[.]

114. MTJV directed IES to perform Post-Fire Base Contract work in fire-damaged areas without first agreeing on a remediation plan for fire-damaged work in those areas. This led to re-work, come-back work, and out-of-sequence work with respect to IES's Post-Fire Base Contract Work, which

needed to be performed around an uncertain and constantly-changing fire-remediation program.

115. MTJV directed IES to perform maintenance services on certain installed equipment.

(*Id.* at ¶¶ 107-17) (emphasis in original). IES asserts that during the post-fire period, it "spent not less than 134,701 unplanned additional labor hours due to inefficiencies caused by MTJV's Mismanagement" and "suffered damages as a result of MTJV's Mismanagement of not less than $11,114,996." (*Id.* at ¶¶ 123-24.)

IES asserts additional categories of damages from MTJV's actions. One, IES asserts that MTJV's actions required IES to provide the Project with temporary power for four years longer than expected, adding 20,522 additional, unplanned labor hours and resulting in $1,607,126 in damages. (*Id.* at ¶¶ 127-29.) Two, IES asserts that because MTJV's Mismanagement led to delays in the Project, IES was required to purchase copper later than planned and at rates considerably higher than anticipated, resulting in a $1,872,933 difference. (*Id.* at ¶¶ 131-40.) Three, IES asserts that it incurred no less than $304,795 in consulting fees as a result of MTJV's mismanagement of the Project. (*Id.* at ¶ 141.) Finally, IES asserts that it was simply not paid for some of its fire remediation work completed in July and the beginning of August of 2017. (*Id.* at ¶¶ 82-90; ECF Nos. 1-4, 1-5.) On or around September 18, 2017, MTJV told IES that it would not be paying IES for this work because "Zurich has ceased making payments on the claim, with specific issues regarding your scope of work. Until such time that Zurich releases additional payment, no further payments can be made." (ECF No. 19 at ¶¶ 95-96.) The invoices for that work totals $1,247,257.53. (*Id.* at ¶ 97.)

## V.     The Amended Complaint

Plaintiffs filed their Complaint on December 6, 2017, and filed an Amended Complaint on February 2, 2018. (ECF Nos. 1, 19.) The Amended Complaint brings claims for cardinal change/quantum meruit against the MTJV Defendants (Count I); breach of contract against the MTJV Defendants (Count II); and a claim under the Miller Act, 40 U.S.C. § 3131, *et seq.*, against the Surety Defendants (Count III). This Court has jurisdiction over Plaintiffs' claims both under diversity jurisdiction,[7] pursuant to 28 U.S.C. 1332, and federal question and supplemental jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1367. In summary, the Plaintiffs allege the following damages, totaling $21,117,200:

| | |
|---|---|
| a. Labor Inefficiency (Pre-Fire Period): | $ 4,970,092 |
| b. Labor Inefficiency (Post-Fire Period): | $ 11,114,996 |
| c. Temporary Power: | $ 1,607,126 |
| d. Material Escalation: | $ 1,872,933 |
| e. Unpaid Fire Remediation Invoices: | $ 1,247,258 |
| f. Consulting Fees: | $ 304,795 |

(ECF No. 19 at ¶ 142.)

On February 16, 2018, all of the Defendants moved to dismiss the Amended Complaint. (ECF No. 22.)

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule

---

[7] IES is a Delaware corporation with its principal place of business located in Texas, and there is complete diversity between IES and the Defendants. (ECF No. 19 at ¶¶ 1-10.)

12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678.

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents attached to the complaint or explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). As pertinent here, "[i]t is axiomatic that the documents comprising a contract are integral to a complaint concerning a breach of that

contract." *Telogis, Inc. v. InSight Mobile Data, Inc.,* No. PWG-14-563, 2014 WL 7336678, at *2 (D. Md. Dec. 19, 2014) (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F.Supp.2d 602, 611 n. 4 (D. Md. 2011)).

## ANALYSIS

Count I of the Amended Complaint asserts a claim under a cardinal change/quantum meruit theory, alleging that the fire so drastically altered the work anticipated by IES when it entered the Subcontract that it constituted a breach of the contract. Count II, pled in the alternative with respect to the damages sought in Count I but also seeking additional damages,[8] asserts that the MTJV Defendants breached the Subcontract through MTJV's Mismanagement of the Project. Count III is then asserted against the Surety Defendants, alleging that they have breached their obligations to IES by failing to pay amounts due and owning by MTJV to IES under the payment Bond. The Defendants move to dismiss all three claims.

### I. Cardinal change/quantum meruit claim against the MTJV Defendants (Count I)

Count I of the Amended Complaint brings a claim for cardinal change/quantum meruit against the MTJV Defendants. The Plaintiffs allege that the fire constituted a cardinal change to the Subcontract, and "the reasonable value of the work IES performed on the Project as a result of the cardinal change, and resulting benefit to MTJV for which payment has not been made is not less than $11,419,791." (ECF No. 19 at ¶¶ 145, 150.) The Defendants argue that Plaintiffs' claim fails as a matter of law for multiple reasons.

---

[8] *See* ECF No. 19 at ¶ 156 ("With respect to the damages also sought in Count I, above, IES pleads this Count II as an alternative theory to its cardinal change/quantum meruit claim set forth in Count I.").

The cardinal change theory upon which the Plaintiffs rely developed in response to the use of "changes" clauses in government contracts. A "changes" clause, such as that found in Article 4 of the Subcontract at issue here, allows the Government to make unilateral contract modifications without seeking consent from the subcontractor and without being in breach of the contract. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511 87 S. Ct. 1177 (1967). As long as "potential bidders would have expected [the modification] to fall within the contract's changes clause' prior to award," the modification falls within the clause. *Colonna's Shipyard, Inc. v. United States*, No. 2:14-cv-331, 2015 WL 9008222, at *9 (E.D. Va. Dec. 14, 2015) (quoting *AT&T Comms., Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993)). When the Government makes such a unilateral modification, the contractor may bring a claim for equitable adjustment. *Id.* Whether the contractor is entitled to an equitable adjustment is determined by the methods provided by the "disputes" clause in the contract. *Id.*

The cardinal change theory developed in response to circumstances when the Government's unilateral modification "exceed[ed] the scope of the contract's changes clause" and therefore was considered a "cardinal change." *AT&T Comms., Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993). A cardinal change occurs "when the government demands a contractual alteration 'so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.'" *Hancock Electronics Corporation v. Washington Metropolitan Area Transit Authority*, 81 F.3d 451 (4th Cir. 1996) (quoting *Allied Materials & Equip. Co. v. United States*, 215 Ct. Cl. 406, 569 F.2d 562, 563-64 (1978)). In other words, a change is cardinal when it cannot be said to have been within the contemplation of

the parties when they entered into the contract. *Wiltel*, 1 F.3d at 1205; *see also Universal Contracting & Brick Pointing Co. v. United States*, 19 Cl. Ct. 785, 792 (1990) (explaining that a changes provision does not authorize a cardinal change). When the Government orders a modification that constitutes a cardinal change, the result is a material breach of the contact, which "has the effect of freeing the contractor of its obligations under the contract, including its obligations under the disputes clause." *JJK Grp., Inc. v. VW Int'l, Inc.*, No. TDC-13-3933, 2015 WL 1459841, at *10 (D. Md. Mar. 27, 2015) (quoting *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1276 (Fed. Cir. 1999)).

Even construing the allegations in the light most favorable to the Plaintiffs, Plaintiffs' cardinal change/quantum meruit claim fails as a matter of law. First, the Amended Complaint alleges that the fire constituted a cardinal change to the Subcontract. The fire itself, however, cannot be considered a cardinal change. Under the theory, the cardinal change refers to the modifications that the Government orders under the contract. Therefore, the pertinent inquiry is whether the work that was required to complete the Project after the fire was a cardinal change from the terms initially bargained for under the Subcontract, and therefore IES is entitled to the value of the increased costs as a result of the cardinal change. *See Wunderlich Contracting Co. v. United States*, 173 Ct. Cl. 180, 194, 351 F.2d 956 (Ct. Cl. 1965) (considering whether the thirty-five change orders ordered by the government were so extensive that they constituted a cardinal change); *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 716 (E.D. Va. 2006) (considering whether change orders constituted cardinal changes).

Second, the Amended Complaint alleges that "[t]he reasonable value of the work IES

performed on the Project as a result of the cardinal change, and resulting benefit to MTJV for which payment has not been made is not less than $11,419,791." (ECF No. 19 at ¶ 150.) Construing the Amended Complaint liberally, the Plaintiffs have alleged that the altered work that was required to complete the Project after the fire was the cardinal change. The $11 million figure, however, is a combination of the value of the post-fire labor inefficiency and consulting fees damages that Plaintiffs allege were caused by *MTJV's Mismanagement* of the Project. (*Id.* at ¶ 141-42.) The Plaintiffs have not alleged that MTJV's Mismanagement of the Project after the fire was a cardinal change. Therefore, Count II does not allege increased costs that were caused by the cardinal change.

Third, even if IES had alleged that the increased costs were due to the fire, IES has not alleged a claim under the cardinal change theory for the fire remediation work under the Subcontract. A cardinal change occurs "when the government *demands* a contractual alteration 'so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for.'" *Hancock Electronics Corporation*, 81 F.3d at 454 (quoting *Allied Materials*, 569 F.2d at 563-64) (emphasis added). Even without analyzing whether the fire remediation work constituted a cardinal change to the Subcontract, under these circumstances Plaintiffs' claim fails because the parties entered into the Fire Rider. In *Amertex Enterprises Limited vs. United States*, No. 26-5070, 1997 WL 73789 (Fed. Cir. Feb. 24, 1997), the United States Court of Appeals for the Federal Circuit analyzed the cardinal change theory when the parties had entered into bilateral modifications of a government contract. 1997 WL 73789, at *1. In rejecting the plaintiff's argument that the series of changes the government made to the original contract constituted a cardinal change, the

court explained:

> Although [the plaintiff] argues that, when presented with the bilateral modifications, it "could not . . . walk away" from the contract, it has neither pleaded nor proven duress. The signed modifications evidence a meeting of the minds and, since the modifications changed both parties' obligations, are supported by consideration. Thus, the bilateral modifications are enforceable contracts which replace the parallel provisions of the original contract. As noted above, the bilateral modifications included modifications to the delivery schedule and the payment scheme. By agreeing to these modifications, [the plaintiff] implicitly agreed to a changed specification and added costs it accrued thereby. . . Since [the plaintiff] agreed to the changes, it implicitly agreed that the changes were within the changes clause of the contract. There can only be a cardinal change if the government required [the plaintiff] to perform materially different duties from those bargained for in the contract *as modified*. [The plaintiff] does not so allege.

1997 WL 73789, at *2 (emphasis in original).

The United States District Court for the Eastern District of Virginia conducted a similar analysis in *Colonna's Shipyard, Inc. v. United States*, No. 2:14-cv-331, 2015 WL 9008222 (E.D. Va. Dec. 14, 2015). In *Colonna's Shipyard*, the court found that a cardinal change did not occur under a contract for ship repair work when new "growth" work was added to a specification package and the parties entered into forty-six contract modifications. 2015 WL 9008222. Although the court noted that the growth work exceeded the plaintiff's expectations, the court explained:

> . . . Plaintiff has not satisfactorily established that the work performed was materially different from that specified in the Contract. Despite the difficulties encountered, a contract to repair a ship remained a contract to repair a ship, and the modifications indicate that these changes were clearly redressable under the Contract. Had the changes been so profound that they were not redressable, it is unlikely that the parties would have been able to negotiate forty-six (46) bilateral contract modifications.

*Id.* at *19 (citing *Amertex*, 1997 WL 73789, at *1).

IES cannot recover under the cardinal change theory because like in *Amertex* and

*Colonna's Shipyard*, the parties bargained for and entered into the "Fire Rider" to account for the fire remediation work. The Amended Complaint alleges that "[a]fter the [f]ire, MTJV desired that IES perform work to repair, replace, or otherwise remediate IES's [w]ork in place that had been destroyed and/or damaged by the [f]ire." (ECF No. 19 at ¶ 73.) Thereafter, MTJV and IES *entered into an amendment* of the Subcontract" to account for the modified work. (*Id.* at ¶ 74) (emphasis added). Therefore, the Government did not demand the fire remediation work. Rather, the work was contemplated for under the Subcontract, as modified by the Fire Rider.

The case upon which the Plaintiffs rely, *Edward R. Marden Corp. v. United States*, 442 F.2d 364, 369, 194 Ct. Cl. 799 (Ct. Cl. 1971), highlights the inapplicability of the cardinal change theory in this case. In *Edward R. Marden*, the plaintiff was working on the construction of an aircraft maintenance hangar when the structure collapsed, causing substantial damage to equipment and work already completed. 442 F.2d at 365. "Following the collapse [the] plaintiff, *under protest*, cleaned up the debris and reconstructed the hangar as directed by the Government." *Id.* (emphasis added). The plaintiff then brought a claim for breach of contract, asserting that the Government's specifications had been defective, the structure collapsed due to the defect, and the "plaintiff was *ordered* to reconstruct the hangar" which resulted in increased costs of $3,700,000. *Id.* at 370 (emphasis added). The court found that considering "the sheer magnitude of reconstruction work caused by the alleged defective specifications," a cardinal change had occurred. *Id.* Therefore, because the reconstruction work had not been bargained for when the contract was awarded, the plaintiff's breach of contract claim was not redressable under the contract's changes clause.

*Id.*

Notably distinguishable from *Edward R. Marden* is the fact that IES was not "ordered" to complete the fire remediation work and did not do so "under protest." *Id.* at 366, 370. Rather, the parties bargained for the work required to complete the Project after the fire by entering into the Fire Rider modification to the Subcontract. Therefore, assuming the modification to the Subcontract after the fire constituted a cardinal change, Plaintiffs chose to address any potential claims under the Subcontract and may not recover under their theory of cardinal change. Accordingly, Defendants' Motion to Dismiss Count I of the Amended Complaint is GRANTED.

## II.    Breach of Contract against the MTJV Defendants (Count II)

Count II of the Amended Complaint, pled in the alternative with respect to the damages sought in Count I but also seeking additional damages, asserts that the MTJV Defendants breached the Subcontract through its Mismanagement of the Project. As a result of MTJV's Mismanagement, Plaintiffs allege that they incurred damages as a result of (1) labor inefficiency before and after the fire, (2) increased copper and power prices, and (3) having to obtain consulting services. Further, IES asserts that MTJV breached the Fire Rider by refusing to pay for the July and August of 2017 fire remediation work.

The parties do not dispute that Maryland law applies to Plaintiffs' breach of contract claims.   To prove breach of contract under Maryland law,   the   Plaintiff   must   present "evidence of a contractual obligation owed by the Defendant[] to the Plaintiff[] and a breach of that obligation by the Defendant[]." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 540 (D. Md. 2014) (citing *RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md.

638, 655, 994 A.2d 430, 440 (Md. 2010)). Beginning with IES's claim that MTJV breached the Subcontract through its Mismanagement of the Project, the Defendants' Motion to Dismiss does not attack the Plaintiffs' allegations that MTJV breached the Subcontract through its Mismanagement. Rather, Defendants argue that under the Subcontract, the Plaintiffs cannot recover for each category of damages they assert they incurred as a result of the Defendants' breach. For example, Defendants argue that the Subcontract mandates that Plaintiffs' sole remedy for delay caused by inefficiency is a time extension. (ECF No. 22-1 at 16.) In their Opposition, Plaintiffs assert that the Defendants' argument is inappropriate at the pleading stage. Plaintiffs have pled a contractual duty and breach of that duty, and under Maryland law, "[i]t is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.''[9] (ECF No. 20 at 12 (quoting Taylor v. NationsBank, N.A., 365 Md. 166, 175, 776 A.2d 645 (2001)).) In response, the Defendants merely point this Court to the "well-known" plausibly standard under Rule 12 of the Federal Rules of Civil Procedure. (ECF No. 25 at 10.)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Plaintiffs have alleged, and in the Motion to Dismiss the Defendants do not challenge, that MTJV assumed various duties and obligations under the Subcontract. The Plaintiffs further allege that MTJV breached those duties and obligations. *See, e.g.*, ECF No. 19 at ¶¶ 62-65, 107-17. Therefore, IES has pled "evidence of a contractual obligation owed by the Defendant[] to the Plaintiff[]

---

[9] The Plaintiffs alternatively assert why they are entitled to each category of damages under the Subcontract.

and a breach of that obligation by the Defendant[]." *EndoSurg Med.,* 71 F. Supp. 3d at 540. The Amended Complaint alleges that as a result of MTJV's Mismanagement, IES incurred damages due to labor inefficiency, increased copper and power prices, and having to obtain consulting services. While Defendants dispute whether Plaintiffs are entitled to these damages, at this stage in the proceedings Plaintiffs correctly note that under Maryland law, a plaintiff is entitled to nominal damages for breach of contract even in the absence of actual damages. *See Taylor v. NationsBank, N.A.,* 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages.") (citations omitted); *Yacoubou v. Wells Fargo Bank, N.A.,* No. ELH-09-2387, 901 F. Supp. 2d 623, 637 (D. Md. 2012), *aff'd sub nom., Adam v. Wells Fargo Bank,* 521 F. App'x 177 (4th Cir. 2013) (citing *Taylor* for the proposition that a plaintiff may recover nominal damages in the absence of actual damages); *Electrical Contractors, Inc. v. Fidelity & Deposit Co. of Maryland,* No. 3:13-cv-00514, 2015 WL 1444481 (D. Conn. 2015) (considering whether the plaintiff was entitled to material escalation costs on a motion for summary judgment).

With respect to Plaintiffs' claim that MTJV breached the Fire Rider by failing to pay IES for the July and August of 2017 fire remediation work, IES asserts that MTJV paid all of IES's invoices for fire remediation work from the Fall of 2013 through June of 2017 within sixty days of receiving the invoices. (ECF No. 19 at ¶¶ 79-81.) On August 11, 2017, however MTJV told IES to cease all fire remediation work. (*Id.* at ¶ 82.) Subsequently, MTJV did not pay IES for its work in July and August. (*Id.* at ¶ 95.) MTJV asserted that this was because

Zurich American Insurance Company, one of the Surety Defendants, had ceased making payments on the claim. (*Id.* at ¶ 96.) IES asserts that MTJV has breached the terms of the Fire Rider by refusing to pay for this time period, totaling $1,247,258. (*Id.* at ¶ 99.)

The MTJV Defendants argue that under the Subcontract, IES assumed the risk of loss, damage, or destruction to its work until the work was accepted by the Government, and upon loss, damage, or destruction, IES was required to repair or rebuild its work at its own cost except to the extent it is reimbursed by insurance.[10] (ECF No. 22-1 at 17 (citing ECF No. 1-1 at ¶ 2.4.1).) From this provision, the Defendants then conclude that "as IES has alleged, the insurer has not paid IES for the alleged $1,247,258, in unpaid fire-remediation invoices. As IES bears the risk of loss for its work, except to the extent of any recovery by the insurer, and the insurer has not paid the amount IES seeks, IES's claim for $1,247,258 for unpaid fire-remediation invoices should be dismissed." (*Id.* at 18.) Notably, the Defendants also assert that Plaintiffs' breach of contract claim against the Surety Defendants, including Zurich American Insurance Company who had presumably been the insurance company also making previous payments under the Fire Rider, fails because of Section 2.4.1's allocation of risk. (ECF No. 25 at 14.)

---

[10] The provision of the Subcontract that the Defendants rely on states:

> 2.4.1 Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, . . . until final acceptance of the Work by the Owner, . . .; in the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, except to the extent of any recoveries or payments from Builders Risk or property insurance, if any, applicable to such loss, damage or destruction.

(ECF No. 1-3.)

The Plaintiffs have alleged, however, that after the fire resulted in damage and loss to the Project, the parties entered into the Fire Rider to govern IES's fire remediation work. The Fire Rider set forth a rate schedule with agreed hourly labor rates, general conditions costs, and markups for overhead, profit and bond. (ECF No. 1-3.) Further, the Fire Rider set forth a system whereby IES would perform the fire remediation work as directed by MTJV, IES would submit daily work tickets and monthly invoices, and once MTJV received approval and payment by the insurance carrier, MTJV would pay IES within ten days. (*Id.*) The MTJV Defendants have not asserted that they do not have an obligation to pay IES because MTJV itself has not been paid by one of the Sureties. The Plaintiffs therefore assert that the Fire Rider governs its breach of contract claim and under the Fire Rider, MTJV has failed to pay IES the pre-established labor and equipment rates for the work performed.

At this stage in the proceedings, Plaintiffs have adequately pled that the Fire Rider, entered into after the fire occurred to cover the fire remediation work, governs IES's claim. Plaintiffs further allege that under the Fire Rider, MTJV has not fulfilled its obligation to pay IES for its work in July and August of 2017. Therefore, Plaintiffs have adequately pled that MTJV breached its obligation to pay IES for some of its fire remediation work, and Defendants' Motion to Dismiss Count II of the Amended Complaint is DENIED.

## III.   Breach of Contract against the Surety Defendants (Count III)

Finally, Count III of the Amended Complaint asserts that the Surety Defendants have breached their obligations to IES by failing to pay amounts due and owing by MTJV to IES under the payment Bond. As explained *supra* note four, the Miller Act required MTJV to furnish a payment bond through the Sureties "for the protection of all persons supplying

labor and material in carrying out the work provided for in the contract." *Id.* § 3131(b)(2). The Act then authorizes any "person that has furnished labor or material in carrying out work" under a Miller Act contract and who "has not been paid in full within 90 days after the day on which the person did or performed the last of the labor furnished or supplied the material" to bring "a civil action on the payment bond." *Id.* § 3133(b)(1).

The Defendants assert that a surety is not liable unless its principal is liable and, therefore because Plaintiffs' breach of contract claim against the MTJV Defendants should be dismissed, IES's claim against the Surety Defendants should also be dismissed. (ECF No. 22 at 18.) For the reasons explained above, however, this Court does not dismiss Plaintiffs' breach of contract claim against the MTJV Defendants. The Defendants raise no other grounds for why Plaintiff's claim should be dismissed, and therefore Defendants' Motion to Dismiss Count III of the Amended Complaint is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 22) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED as to Count I, and Plaintiffs' cardinal change theory claim is DISMISSED. Defendants' Motion is DENIED, however, as to Counts II and III and Plaintiffs proceed with their breach of contract claims.

A separate Order follows.


Dated: September 26, 2018 _____/s/_____

Richard D. Bennett
United States District Judge